_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

DEC 31 2008   LH

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

08-CV-01861-CMP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAREN HANDLIN, BRIAN HANDLIN, and
MAXINE FORTUNE,

                    Plaintiffs,

v.

MURPHY   PIERSON;   MICHELLE
MERCERI;   KATHERINE   MERCERI;
ALTERNATIVE INVESTORS, INC.; FOCUS
MORTGAGE, LLC; AZ-WA INVESTORS (a
partnership); RECONTRUST   COMPANY,
N.A.;   and   GMAC   MORTGAGE
CORPORATION,

                    Defendants.

NO. **C 08-1861** JCC

NOTICE OF REMOVAL UNDER
28 U.S.C. § 1441

TO:          THE CLERK OF THE COURT

AND TO:      ERIC DUNN, Attorney for Plaintiffs

PLEASE TAKE NOTICE that defendant GMAC MORTGAGE CORPORATION

does hereby remove to the United States District Court for the Western District of

Washington. Removal is based upon *inter alia*, the following grounds:

1.      On November 7, 2008, plaintiffs Karen Handlin, Brian Handlin, and

Maxine Fortune filed their Complaint in this action in the King County Superior Court for

the State of Washington as Case No. 08-2-38667-8SEA. The Complaint alleges causes of

action against the Defendant under the Truth in Lending Act, 15 U.S.C. § 1601, the Real

Estate Settlement Procedures Act, 15 U.S.C. § 2605, and the Racketeering-Influenced and

NOTICE OF REMOVAL UNDER 28 U.S.C. §
1441(b) - 1

**ORIGINAL**

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

Corrupt Organizations Act (RICO), 18 U.S.C.1962. *See* Complaint at ¶¶ 54, 64 and 81 (Attached hereto as Exhibit A).

2.   The Summons (Attached hereto as Exhibit B) and Complaint were served on Defendants on December 4, 2008.

3.   This is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1331 (federal question).

4.   Because Plaintiff filed the above-entitled action in King County Superior Court this case should be assigned to the United States District Court for the Western District of Washington in Seattle pursuant to Local Rule 5(e)(1).

5.   This notice is filed with the Court within thirty (30) days after Defendants were served with the Complaint pursuant to 28 U.S.C. §1441(b).

6.   All state law claims asserted by Plaintiff in the Complaint relate to and arise from the same nucleus of operative facts. Accordingly, pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction to hear and decide all claims asserted by Plaintiffs in the Complaint.

7.   Defendants caused a copy of the Notice to Adverse Party of Removal to Federal Court to be filed in King County Superior Court and served upon the Plaintiff. Copies of Defendants' Notice and Certificate of Service of such notice are attached hereto as Exhibit C.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

NOTICE OF REMOVAL UNDER 28 U.S.C. §
1441(b) - 2

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

WHEREFORE, Defendants give notice that the above-entitled action pending against it in the Superior Court for the State of Washington, County of King is hereby removed to this Court.

DATED this 31st day of December 2008.

BISHOP, WHITE, & MARSHALL, P.S.

David A. Weibel, WSBA # 24031
Attorneys for Defendant
GMAC Mortgage Corp.

## DECLARATION OF SERVICE

I declare, under penalty of perjury under the laws of the State of Washington and the United States of America, that on the 31st day of December, 2008, I caused a copy of the Notice of Removal Under 28 U.S.C. § 1441(b) to be served on all parties and/or their counsel of record in the manner indicated below:

Eric Dunn                                    [ ] By United States Mail
Northwest Justice Project                    [x] By Legal Messenger
401 Second Avenue S., Suite 407              [ ] By Facsimile
Seattle, WA 98104                            [x] By Hand Delivery

Dated this 31st day of December, 2008, at Seattle, Washington.

Angela Craig

NOTICE OF REMOVAL UNDER 28 U.S.C. §
1441(b) - 3

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

# EXHIBIT A

Hon. Mertel
Trial Date: May 3, 2010

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

KAREN HANDLIN, BRIAN HANDLIN, and
MAXINE FORTUNE

                Plaintiffs,

        vs.

MURPHY PIERSON, MICHELLE MERCERI,
KATHERINE MERCERI, ALTERNATIVE
INVESTORS, INC., FOCUS MORTGAGE,
LLC, AZ-WA INVESTORS (a partnership),
RECONTRUST COMPANY, N.A., and
GMAC MORTGAGE CORPORATION

                Defendants.

No. 08-2-38667-8 SEA

FIRST AMENDED COMPLAINT

Plaintiffs Karen Handlin and Brian Handlin submit this First Amended Complaint as of right, pursuant to CR 15(a):

**INTRODUCTORY STATEMENT**

1. Plaintiffs Karen and Brian Handlin are Bellevue, Washington, homeowners; Plaintiff Maxine Fortune is the mother of Karen Handlin.

COPY

FIRST AMENDED COMPLAINT - 1

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

2. In 2007, the Plaintiffs fell behind on a $284,000 home loan, secured by a mortgage on their $502,000 residence; when foreclosure proceedings commenced, the Defendants contacted the Plaintiffs and offered to help them "save the home from foreclosure."

3. However, what the Defendants intended to do, and ultimately did to the Plaintiffs, was orchestrate an unlawful scheme, called a "distressed home conveyance," designed to strip the Plaintiffs of their home equity.

4. A distressed home conveyance is a common type of "foreclosure rescue scam," fraudulent transactions designed to exploit the circumstances of homeowners facing foreclosure:

> This scenario includes various schemes under which the homeowner surrenders title to the house in the belief that s/he is entering a deal where s/he'll be able to remain as a renter, and buy it back over the next few years. . . But the terms of these deals are almost invariably so onerous that the buyback becomes impossible, the homeowner permanently loses possession, and the 'rescuers' walk off with all or most of the home's equity.

*National Consumer Law Center*, "Dream Foreclosed: The Rampant Theft of Americans' Homes through Equity-Stripping Foreclosure 'Rescue' Scams," June 2005.

5. The Washington Legislature has recently enacted legislation designed to curb such foreclosure rescue scams, including distressed home conveyances; see S.L. 2791 of 2008, see RCW 61.34.020(5) (defining "distressed home conveyance"); see also RCW 61.34.010 ("The legislature finds that persons are engaging in patterns of conduct which defraud innocent homeowners of their equity interest or other value in residential dwellings under the guise of a purchase of the owner's residence but which is in fact a device to convert the owner's equity interest or other value in the residence.").

6. After using a malicious distressed home conveyance to convert the Plaintiffs' home equity, the Defendants commenced judicial unlawful detainer proceedings intended to evict the Plaintiffs from their home.

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1    7. The Plaintiffs now bring this action designed to reclaim their home from the

2    Defendants; the Plaintiffs seek an order declaring the deed transferring title of their home to

3    Defendant (Murphy Pierson) be void or at most an equitable mortgage, and injunctive relief

4    precluding eviction and restraining Defendants from bringing financial ruin to others through

5    similar equity-stripping scams.

6    **BACKGROUND ALLEGATIONS**

7    8. Plaintiff Maxine Fortune purchased the property commonly known as 5623 - 129th

8    Avenue SE, Bellevue, Washington (the property or the home), in 1973, and lived there as her

9    primary residence until Fall 2008.

10    9. Plaintiff Karen Handlin, the daughter or Maxine Fortune, has lived in the property at

11    all relevant times.

12    10. The legal description of the property at 5623 - 129th Avenue SE in Bellevue is:

13    Lot 3, Block 1, Newport Hills No. 9, according to the plat thereof recorded
     in Volume 69 of Plats, page 17, records of King County, Washington

14    11. The Tax Parcel Number for the property is 607190-0030-06.

15    12. Prior to 2006, Maxine Fortune executed certain quit claim deeds conveying the

16    property to herself and her daughter, Plaintiff Karen Handlin, as tenants in common.

17    13. In 2004, Maxine Fortune and Karen Handlin took out a home equity loan (the

18    "Argent Loan"") from a company called Argent Mortgage Company, LLC; the principal of the

19    note was $284,000 and payment was secured by a Deed of Trust to the property.

20    14. In 2007, Maxine Fortune and Karen Handlin became delinquent on the Argent Loan,

21    so the trustee for the Argent Loan recorded a notice of trustee's sale on July 25, 2007; the sale

22    was scheduled for November 9, 2007.

23    15. Shortly after the Notice of Trustee's Sale was published, Plaintiffs received a mailed

24

FIRST AMENDED COMPLAINT - 3

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1    advertisement from Defendant Alternative Investors, Inc., which offered a "solution" that could

2    help the Plaintiffs "save [their] home from foreclosure;" the advertisement claimed Alternative

3    Investors, Inc., had "helped over 100 families get out from under the threat of foreclosure."

4        16. Plaintiffs responded to the ad by calling Alternative Investors, Inc., and spoke with

5    Defendant Michelle Merceri.

6        17. Defendant Michelle Merceri of Alternative Investors, Inc., proposed that the Plaintiffs

7    enter into a transaction whereby: (i) Alternative Investors would locate an "investor" to pay off

8    the Plaintiffs' delinquent Argent Loan; (ii) the Plaintiffs would give a deed to their property to

9    the Defendants, who would "hold title;" (iii) the Plaintiffs would make "payments" to the

10   investor for eighteen months thereafter; and (iv) at the end of the eighteen month period, the

11   Plaintiffs would reacquire title of their home by paying off the investor, using a new loan that

12   Alternative Investors would assist the Plaintiffs in obtaining.

13       18. In net effect, the transaction Michelle Merceri proposed to the Plaintiffs amounted to

14   a "distressed home conveyance," as defined by RCW 61.34.020(5).

15       19. A distressed home conveyance is, in substance, a home equity loan, but one that takes

16   the written form of sequential sales, leases, and option agreements; by using the sale-leaseback

17   form, the Defendants intended (i) to circumvent the Truth-In-Lending Act, Consumer Loan Act,

18   usury statute, and other consumer protection laws that pertain to home equity loans, and (ii)

19   deprive the Plaintiffs of the legal protections afforded by Washington's foreclosure laws in the

20   event of default.

21       20. After speaking with the Michelle Merceri, the Plaintiffs expressed interest in pursing

22   a "solution" along the lines Michelle Merceri described.

23       21. Defendants Michelle Merceri and Katherine Merceri ("the Merceris") of Alternative

24

FIRST AMENDED COMPLAINT - 4

1  Investors, Inc., then arranged for their partner and business associate, Defendant Murphy

2  Pierson, to "invest" in the property, and the Merceris prepared documents by which to effectuate

3  the distressed home conveyance transaction.

4      22. At various times between early August and mid-October of 2007, the Merceris

5  prepared and the Plaintiffs executed various documents concerning the transaction; Defendant

6  Pierson also executed documents the Merceris prepared during this time; the Merceris promised

7  to provide copies of the documents to the Plaintiffs but never did so; the Plaintiffs have since

8  obtained copies of some of the documents but have been unable to obtain copies of other

9  materials; accordingly, the exact contents of the documents are not presently known to the

10  Plaintiffs; however, on information and belief, the significant documents included:

11      a. A Statutory Warranty Deed ("the deed") that Karen Handlin, Brian

12      Handlin, and Maxine Fortune executed on or about October 11, 2007, purporting to

13      convey the home to Murphy Pierson; all parties to the deed intended the deed not as an

14      outright conveyance, but as security to assure that the Plaintiffs' payment of the financial

15      obligations associated with the transaction (in substance, $1,800 per month in "rent" plus

16      a $485,000 "repurchase" price);

17      b. A residential rental agreement, whereby Pierson agreed to "lease" the

18      property back to the Plaintiffs for $1,800 per month rent; and

19      c. A "Residential Option to Purchase Agreement," whereby the Plaintiffs

20      promised to "repurchase" their home from Pierson for $485,000 after 18 months, using a

21      loan obtained through Defendant Focus Mortgage, LLC.

22      23. On an unknown date prior to November 9, 2007, Defendant Murphy Pierson obtained

23  a $417,000 mortgage loan from GMAC Mortgage Corporation (GMAC); the loan was brokered

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1  and arranged by the Merceris and Defendants Focus Mortgage, LLC, and Alternative Investors,

2  Inc.; repayment of Pierson's loan was secured by a deed of trust concerning the Plaintiffs' home

3  (5623 - 129th Avenue SE in Bellevue).

4      24. On information and belief, approximately $290,686.58 of the proceeds from Pierson's

5  GMAC Loan were paid to retire the delinquent Argent Loan, and about $120,000 of the balance

6  was appropriated by Defendants Michelle Merceri, Katherine Merceri, Alternative Investors,

7  Inc., and Focus Mortgage, LLC, in unknown portions.

8      25. The Defendants also promised the Plaintiffs that Focus Mortgage, LLC, a company

9  owned and controlled by the Defendants, would procure the financing necessary for the Plaintiffs

10  to "repurchase" their home at the end stage of the transaction; indeed, the transaction terms

11  further prohibited the Plaintiffs from obtaining financing through any other source but Defendant

12  Focus Mortgage, LLC.

13      26. To complete the "repurchase" would have required the Plaintiffs to obtain a purchase

14  money loan (rather than a home equity loan), of at least $485,000; the Defendants knew, or

15  should have known, that the Plaintiffs could not realistically have qualified for such financing,

16  yet the Defendants failed to sufficiently inform the Plaintiffs of the amount the Plaintiffs would

17  need to borrow or the likelihood the Plaintiffs could obtain such financing.

18      27. As the Plaintiffs' home had been appraised in 2007 for $502,000 and the tax-assessed

19  value was over $470,000, the Plaintiffs would not have sold it in 2007 for $290,686.58.

20      28. For the Plaintiffs to preserve their home in accordance with the transaction terms as

21  arranged by the Defendants, the Plaintiffs would effectively pay a finance charge of at least

22  $220,379.22 over 18 months on a loan principal of, at most, $297,020.78, meaning the effective

23  annual interest rate of the transaction was at least 49.46%.

24

FIRST AMENDED COMPLAINT - 6

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1      29. Throughout the discussions leading to the distressed home conveyance, the Plaintiffs

2   never received Truth-In-Lending cost-of-credit disclosures, or a HUD-1 Settlement Statement, or

3   any substantial equivalent showing a complete and accurate breakdown of the funds they were

4   borrowing, the associated finance charges and interest rates, the total of payments, schedule of

5   payments, or other material information setting forth the substantial terms of the transaction.

6      30. The Plaintiffs did not understand the amount they were borrowing or the amount they

7   would need to repay in order to keep their home, nor did the Plaintiffs understand the legal

8   consequences of default (on the transaction with the Defendants).

9      31. Beginning in November 2007, the Plaintiffs began making monthly payments of

10   $1,800 to the Defendants via a U.S. Bank account in the name of "Murphy Pierson/Alternative

11   Inv.;" Plaintiffs paid Defendants at least $17,100 through September 2008 in this manner.

12      32. In September 2008, Defendant Pierson served the Plaintiffs with a 20-Day Notice to

13   Terminate Tenancy and refused to accept further "rent" payments thereafter; Pierson claimed the

14   Plaintiffs were then occupying the premises pursuant to a "month-to-month" tenancy and that he

15   was entitled to terminate the tenancy pursuant to RCW 59.12.030(2).

16      33. The Plaintiffs had continued to occupy the residence without incident until September

17   2008, at which time Defendant Pierson first commenced efforts to evict the Plaintiffs from the

18   home; since that time, Maxine Fortune has moved out of the property but Plaintiffs Karen and

19   Brian Handlin still live there with their children.

20   **PARTIES, JURISDICTION AND VENUE**

21      34. Plaintiffs Karen Handlin, Brian Handlin, and Maxine Fortune are natural persons who

22   live in King County, Washington.

23

24

FIRST AMENDED COMPLAINT - 7

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1       35. Defendants Michelle Merceri, Katherine Merceri, and Murphy Pierson are natural

2   persons who carry on continuous and systematic business in King County, Washington,

3   including with respect to the transactions and occurrences alleged in this complaint.

4       36. Defendants Alternative Investors, Inc., Focus Mortgage, LLC, AZ-WA Investors (a

5   partnership), ReconTrust Company, N.A., and GMAC Mortgage Corporation are business

6   organizations that carry on continuous and systematic business in King County, Washington,

7   including with respect to the transactions and occurrences alleged in this complaint.

8       37. Defendants Michelle Merceri, Katherine Merceri, and Murphy Pierson are agents of

9   each other and of Alternative Investors, Inc., Focus Mortgage, LLC, and AZ-WA Investors;

10   Defendants Alternative Investors, Inc., Focus Mortgage, LLC, and AZ-WA Investors are agents

11   of each other and of Defendants Michelle Merceri, Katherine Merceri, and Murphy Pierson.

12       38. Defendants Michelle Merceri, Katherine Merceri, and Focus Mortgage, LLC, are

13   agents of each other and of GMAC.

14       39. ReconTrust Company, N.A., is the trustee of the deed of trust concerning the

15   property, which purports to secure Murphy Pierson's repayment of the GMAC loan.

16       40. Venue is appropriate in this Court because the central purpose of this lawsuit

17   concerns the determination of questions affecting title to real estate located in Bellevue, King

18   County, Washington. See RCW 2.08.210; 4.12.010(1); also, the principal parties and witnesses

19   are present in King County and the substantial events giving rise to the action took place in King

20   County; this action is subject to the Seattle case assignment area. See LR 82(e)(3).

21   **COUNT ONE: QUIET TITLE -- EQUITABLE MORTGAGE**

22       41. Upon information and belief, Defendants advanced funds of about \$290,020.58 on

23   behalf of the Plaintiffs between August and November, 2007, for the purpose of retiring a

24

FIRST AMENDED COMPLAINT - 8

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1  delinquent mortgage then encumbering the Plaintiffs' home.

2      42. The Plaintiffs signed a "Residential Option to Purchase Agreement" purporting to

3  agree to repay these funds, with substantial interest, at the rate of $1,800 per month for 18

4  months, and then $485,000 in a "balloon payment" at the end of the 18 month period, and gave

5  the Defendants a Statutory Warranty Deed to secure performance of this financial obligation;

6  despite the contents of the written document, the Plaintiffs believed, based on the Defendants

7  earlier oral representations, that the "repurchase" amount would be roughly equal to the amount

8  paid to retire the Argent Loan (which the Plaintiffs believed was around $285,000).

9      43. The Defendants accepted the Statutory Warranty Deed for the express purpose of

10  "holding title" and with the expectation that the deed would serve as security; no party intended

11  for the Statutory Warranty Deed to convey outright title of the property to Defendants; if the

12  Defendants did so intend, they fraudulently concealed that intent by representing to the Plaintiffs

13  that the purpose of the deed was for security.

14      44. The circumstances under which the Plaintiffs executed the Statutory Warranty Deed

15  further demonstrate that the deed was intended as security for a loan, and not as an outright

16  conveyance, because, among other things:

17        a.    The Plaintiffs were facing foreclosure on their Argent Loan and executed

18      the deed under financial distress;

19        b.    An ongoing debtor-creditor relationship continued after the execution and

20      delivery of the deed, and all parties anticipated that the Plaintiffs would ultimately remain

21      the owners of the home;

22        c.    The consideration the Plaintiffs received for the deed was egregiously

23      inadequate and unfair to the Plaintiffs, consisting of about $290,686.58 in actual value

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1   received, whereas the property was worth at least $470,000 and had been appraised for

2   over $500,000 around the time of the transaction;

3       d. The Plaintiffs remained responsible for maintaining the property and paying for

4   repairs and upkeep even after the deed;

5       e. Defendant Murphy Pierson, the grantee on the deed, expected to receive

6   financial compensation for his role in the transaction and did not intend to become the

7   owner of the Plaintiffs' home or serve as their landlord; and

8       f. In the oral discussions leading to the deed, the parties discussed only a

9   financing transaction, not a real estate sale, and the Defendants' oral and written

10  representations indicated that the Defendants were interested in helping the Plaintiffs

11  "save their home from foreclosure"

12  45. The Defendants wrongfully and deceptively masked this credit transaction as a series

13  of real estate sales for improper purposes, including:

14      a. To conceal the fact that the transaction was in substance a loan, which would

15  have required the Defendants to give cost-of-credit disclosures and an itemized list of

16  transaction fees, charges, and disbursements, information that could have deterred the

17  Plaintiffs from entering into the transaction;

18      b. To conceal the fact that the Merceris, Alternative Investors, Inc., and Focus

19  Mortgage, LLC, would receive approximately $120,000 of the Plaintiffs' home equity

20  from the transaction, an amount wholly out of proportion to the value of any benefits or

21  services they could have provided to the Plaintiffs;

22      c. To conceal the fact that the transaction was in substance a loan, which would

23  have prohibited the Defendants from collecting more than 12% (annual) interest on the

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1    principal loaned, whereas this transaction called for the Plaintiffs to repay the total of

2    $517,400.00 within 18 months on loaned funds of about $290,686.58, an effective annual

3    interest rate of at least 49.46%; and

4        d. To conceal the fact that the transaction was a loan, thus enabling Defendant

5    Pierson to obtain a home loan from Defendant GMAC, from the proceeds of which the

6    other Defendants realized their unjust gains.

7    46. The transaction is designed to deprive the Plaintiffs of their statutory and common

8    law redemption rights because, under the written terms of the transaction the Plaintiffs must pay

9    $517,400.00 within 18 months, or else Defendant Pierson, without foreclosing on the loan as

10   ordinarily required by law, would automatically assume title to the Plaintiffs' home.

11   47. The Statutory Warranty Deed having been intended to convey only a security interest

12   to Defendant Pierson, and not as an outright conveyance of title, the deed should thus be declared

13   an equitable mortgage. See *Plummer v. Ilse*, 41 Wash. 5, 11; 82 P. 1009 (1905) ("Where the

14   transactions actually occurring between the parties are clearly of such a nature as to show a deed

15   absolute in form to have been a mortgage, courts of equity will construe it as such."); see also

16   *Phillips v. Blaser*, 13 Wash.2d 439; 125 P.2d 291 (1942); *Parker v. Speedy Re-Finance, Ltd.*, 23

17   Wn. App. 64; 596 P.2d 1061 (1979); *Gossett v Farmers Ins. Co.*, 133 Wash.2d 954; 948 P.2d

18   1264 (1997).

19   48. An order of quiet title, restoring title of the home to Plaintiffs Karen Handlin and

20   Maxine Fortune, is thus appropriate pursuant to RCW 7.28 et seq.

21   49. Defendant GMAC, and any party to who received an assignment of any interest in

22   title to the property from Defendant Pierson, acquired its interest in the property with actual or

23   constructive knowledge of the Plaintiffs' interests, because, among other reasons, the Plaintiffs

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1   have continuously resided in the property at all relevant times and would have truthfully and

2   accurately described their interest in the property if asked. See *Mieback v. Colasurdo*, 35 Wn.

3   App. 803, 815; 670 P.2d 276 (1983) ("possession constitutes notice [because] it generally creates

4   an apprehension in a reasonable mind that the possessor has a claim to the property, requiring

5   further inquiry.").

6   COUNT TWO: UNCONSCIONABILITY

7       50. The terms of the transaction into which the Plaintiffs entered was unconscionable

8   because the Plaintiffs lacked meaningful choice at the time of entering into the transaction and

9   because the terms were grossly unfair and abusive to the Plaintiffs.

10       51. The Plaintiffs lacked meaningful choice at the time of entering into the contract

11   because, among other things:

12         a. The Plaintiffs were facing foreclosure on their home and entered the transaction

13       under pressure and financial duress;

14         b. Important transaction terms and other relevant information, such as the loan

15       principal, interest rate, and total of payments, was not disclosed to the Plaintiffs in a full,

16       fair, accurate and timely manner and the Defendants made deceptive or misleading

17       representations concerning the transaction terms, as well as the Defendants' intentions,

18       qualifications, and fees;

19         c. Without material cost-of-credit disclosures and without an itemized settlement

20       statement, the Plaintiffs were deprived of a reasonable opportunity to evaluate the

21       transaction and understand its terms prior to entering into it.

22       52. The transaction terms were grossly unfair and abusive to the Plaintiffs because,

23   among other things:

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

a. The transaction provided the Merceris, Alternative Investors, Inc., and Focus Mortgage, LLC, with approximately $120,000 of the Plaintiffs' home equity, an amount wholly out of proportion to the value of any benefits or services they could have provided to the Plaintiffs;

b. The transaction called for the Plaintiffs to pay over $220,00 in finance charges over 18 months on a loan principal of, at most, $297,020.78, meaning the effective annual interest rate of the transaction was at least 49.46%, more than quadruple the permissible interest rate under RCW 19.52.020;

c. By arranging for the Plaintiffs to secure the transaction with a Statutory Warranty Deed, rather than a Deed of Trust or other orthodox form of security interest, the Defendants caused the Plaintiffs to forfeit the statutory and common law redemption rights and other legal notices and protections associated with foreclosure; and

d. By requiring the Plaintiffs to obtain a subsequent home equity loan through Defendant Focus Mortgage, LLC, the Defendants undermined the Plaintiffs' ability to engage in comparison shopping and bargain for favorable loan terms.

53. Accordingly, this Court should find the transaction terms both procedurally and substantively unconscionable, and rescind the transaction consistent with the principles of equity and the interests of justice.

**COUNT THREE: TRUTH-IN-LENDING ACT VIOLATIONS**

54. Defendants are "creditors" for purposes of the federal Truth-In-Lending Act, 15 USC 1601 et seq.

55. As "creditors," Defendants were statutorily obligated to provide material cost-of-credit disclosures to the Plaintiffs, including amount financed, finance charge, total of payments,

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1 annual percentage rate, good faith estimate, notice of right to cancel, and other information, at

2 least three days prior to making a home equity loan to the Plaintiffs. See 15 USC 1601 et seq.

3 56. The Defendants failed to provide material cost-of-credit disclosures to the Plaintiffs in

4 accordance with the Truth-In-Lending Act.

5 57. Consequently, the transaction is subject to statutory rescission in accordance with 15

6 USC 1635, and the Plaintiffs are entitled to damages pursuant to 15 USC 1640.

7 58. Furthermore, Defendants' failure to deliver the required cost-of-credit disclosures

8 constitutes a per se violation of the Consumer Protection Act, being RCW 19.82 et seq.

9 **COUNT FOUR: USURY**

10 59. The loan that Defendants made to the Edlunds was subject to Washington's Usury

11 Statute, being RCW 19.52 et seq.

12 60. The maximum permissible interest rate on this home loan was therefore at or less than

13 12% per annum.  RCW 19.52.020(1).

14 61. As explained above, the interest rate on this transaction was in excess of 49.46% per

15 annum, and was therefore usurious and unlawful pursuant to RCW 19.52.020(1).

16 62. Various Defendants have already collected and appropriated to themselves at least

17 $144,300 of unlawful interest on this transaction, and are liable for the return of at least double

18 that finance charge, being a minimum of $288,600.

19 63. Defendants' efforts in collecting this unlawful debt are unlawful and constitute a per

20 se violation of the Consumer Protection Act, being RCW 19.82 et seq.

21 **COUNT FIVE: RESPA VIOLATIONS**

22 64.    If the Defendants claim that the loan they made to the Plaintiffs was a federally-

23 related mortgage loan, then Defendants were obligated to provide the Plaintiffs with a standard

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1  form for the statement of settlement costs developed and prescribed by the U.S. Department of

2  Housing and Urban Development (HUD), also known as a "HUD-1 Settlement Statement." 12

3  USC 2603 (Real Estate Settlement Procedures Act, or "RESPA").

4      65. Defendants failed to prepare and issue to the Plaintiffs a HUD-1 Settlement Statement

5  accurately disclosing the settlement costs in this transaction, in violation of 12 USC 2603.

6      66. Failure to provide a HUD-1 Settlement Statement in transactions where the statement

7  is required is a per se violation of the Consumer Protection Act, being RCW 19.82 et seq.

8  COUNT SIX: WASHINGTON MORTGAGE BROKER PRACTICES ACT VIOLATIONS

9      67. Some Defendants are, or acted as, mortgage brokers or loan originators subject to the

10  Mortgage Broker Practices Act, being RCW 19.146 et seq.

11      68. The Plaintiffs consulted with some Defendants in an effort to obtain or seek advice or

12  information on obtaining or applying for a residential mortgage loan, for which reason the

13  Plaintiffs are "borrowers" entitled to certain protections under the Mortgage Broker Practices

14  Act. See RCW 19.146.010(2).

15      69. Those Defendants subject to the Mortgage Broker Practices Act violated numerous

16  provisions of that Act with respect to the Plaintiffs, including:

17      a. Employing a scheme, device, or artifice to defraud and mislead the Plaintiffs,

18  which was designed and did deprive the Plaintiffs of about $120,000 in home equity;

19      b. Employing a scheme, device, or artifice to defraud and mislead the Plaintiffs,

20  which was designed to deprive the Plaintiffs of their home for an unfair price (being at

21  over $180,000 less than its appraised value), or alternatively to gain finance charges of

22  at least $220,000 on loaned funds of no more than $297,020.78 over 18 months;

23

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1            c. Engaging in unfair and deceptive practices, such as promising to help the

2  Plaintiffs "save their home from foreclosure" while having no such intention, falsely

3  claiming to have "helped over 100 families get out from under the threat of foreclosure,"

4  and as detailed elsewhere in this Complaint,;

5            d. Withholding relevant information material to a real estate financing transaction

6  that Defendants had a duty to disclose to Plaintiffs, such as the interest rate, or the fact

7  that to "repurchase" their house would likely require the Plaintiffs to secure a purchase

8  money mortgage loan for which they almost certainly could not qualify;

9            e. Failing to provide the written disclosures to the Plaintiffs that are required by

10  RCW 19.146.0201(13)(b);

11            f. Preparing and arranging a real estate credit transaction without providing the

12  Plaintiffs the written disclosures of fees and costs required by RCW 19.146.030; and

13            g. Actually charging and receiving fees from the Plaintiffs without providing the

14  written disclosures required by RCW 19.146.030, and obtaining fees of a type or in an

15  amount not permitted by RCW 19.146.030 or RCW 19.146.030.

16  **COUNT SEVEN: BREACH OF FIDUCIARY DUTY**

17       70. Defendants Michelle Merceri, Katherine Merceri, Alternative Investors, Inc., and

18  Focus Mortgage, LLC, owed common law fiduciary duties to the Plaintiffs because (i) those

19  Defendants agreed to act as the Plaintiffs' agents, and (ii) the Plaintiffs placed their trust and

20  confidence in the Defendants, and relied on the Defendants to exercise their skills and expertise

21  for the Plaintiffs' benefit.

22

23

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    71. Defendants Michelle Merceri, Katherine Merceri, Alternative Investors, Inc., and

2  Focus Mortgage, LLC, also owed statutory fiduciary duties to Plaintiffs under RCW 19.146.095

3  and RCW 61.34.060.

4    72. Defendants Michelle Merceri, Katherine Merceri, Alternative Investors, Inc., and

5  Focus Mortgage, LLC, breached the fiduciary duties they owed the Plaintiffs by:

6        a. Failing to act in the Plaintiffs' best interests and utmost good faith by taking

7      excessive and unreasonable fees (of approximately $120,000);

8        b. Having a conflict of interest between fiduciary duties owed to the Plaintiffs and

9      duties owed to Defendant Pierson, and actually causing Pierson to acquire the Plaintiffs'

10      home for substantially less than its value;

11        c. Advising and instructing the Plaintiffs to enter into a financing transaction in

12      which the Plaintiffs would have to pay at least $220,000 interest over 18 months on

13      loaned funds of no more than $297,020.78, failing to advise the Plaintiffs not to enter into

14      such an onerous transaction, failing to procure for the Plaintiffs a legitimate mortgage

15      loan having reasonable fees and interest rates despite having had the ability to do so,, and

16      by arranging for the Plaintiffs to sign a contract obligating them to refinance the sale-

17      leaseback loan with Focus Mortgage, LLC, at the end of an 18 month "lease term;"

18        d. Failing to disclose important information relevant to the transaction, such as the

19      Defendants' true intention, the amount of financial gain the Defendants expected from

20      the transaction, the nature of Defendant Pierson's affiliation with the other Defendants, or

21      and the fact that the Plaintiffs were unlikely to qualify for a $485,000 purchase money

22      loan with which to "buy-back" their home at the end-stage of the transaction; and

23

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1    e. Failing to use due care and skill in representing the Plaintiffs by advising and

2    arranging for the Plaintiffs to enter into a distressed home conveyance despite knowing,

3    or being in a position to have known, that a distressed home conveyance would require

4    the Plaintiffs to incur exorbitant and unconscionable fees and would not realistically

5    enable the Plaintiffs to avoid losing their home.

6    73. Each violation of the Defendants' fiduciary duties constitutes a per se violation of the

7    Consumer Protection Act, for which the Plaintiffs are entitled to relief under RCW 61.34.040

8    and RCW 19.86 et seq.

9    COUNT EIGHT: WASHINGTON CREDIT SERVICES ORGANIZATIONS ACT VIOLATIONS

10    74. Defendants Michelle Merceri, Katherine Merceri, Alternative Investors, Inc., and

11    Focus Mortgage, LLC, are "Credit Service Organizations" because they represented to the

12    Plaintiffs that they could help them avoid a pending home foreclosure and help the Plaintiffs

13    "rebuild their credit." See RCW 19.134.010(2)(a).

14    75. The Defendants violated several provisions of the Credit Services Organizations Act

15    (CSOA) with respect to the transaction involving the Plaintiffs, including:

16    a. Employing a scheme, device, or artifice to defraud and mislead the Plaintiffs,

17    which was designed to and did deprive the Plaintiffs of about $120,000 in home equity;

18    b. Engaging in unfair and deceptive practices, such as promising to help the

19    Plaintiffs "save their home from foreclosure" while having no such intention, falsely

20    claiming to have "helped over 100 families get out from under the threat of foreclosure,"

21    and as detailed elsewhere in this Complaint,;

22    c. Making deceptive and misleading statements and omissions concerning the

23    Plaintiffs' financial position and ability to qualify for financing;

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1          d. Failing to provide the written disclosures to the Plaintiffs that are required by

2  RCW 19.134.040 and 19.134.060, and failing to disclose the information required by the

3  CSOA, such as a complete and detailed description of the services to be performed by the

4  Defendants for the Plaintiffs and the total amount the Plaintiffs would have to pay, or

5  become obligated to pay, for the services;

6          e. Failing to use due care and skill as Credit Service Organizations by causing the

7  Plaintiffs to enter into a transaction whereby the Plaintiffs gave a deed to their $502,000

8  home to Defendant Pierson for consideration of about $290,686.58, and to recover the

9  deed would need to pay over $220,000 in finance charges on a loan principal of

10  $297,020.78 over 18 months;

11          f. Actually charging and receiving fees from the Plaintiffs without providing

12  required written disclosures, in violation of RCW 19.134.020.

13      76. Each of these violations of the Credit Services Organizations Act constituted per se

14  violations of the Consumer Protection Act, for which the Plaintiffs are entitled to relief under

15  RCW 19.86 et seq.

16  COUNT NINE: WASHINGTON CONSUMER PROTECTION ACT VIOLATIONS

17      77. As set forth above, all the Defendants committed per se violations of the Washington

18  Consumer Protection Act, being RCW 19.82 et seq.

19      78. In addition to such per se violations, the Defendants engaged in numerous other

20  unfair and deceptive commercial practices, including:

21          a. Disguising a financing transaction as a series of real estate purchases, sales,

22  leases, and options, for the purpose of masking the true cost of the credit and of

23  circumventing and undermining the Plaintiffs' legal protections;

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1           b. Charging a usurious interest rate and fees that were grossly in excess of

2    reasonable compensation for the benefits Defendants provided to the Plaintiffs;

3           c. Preparing written transaction documents that differed from the Defendants' oral

4    explanations of the transaction terms, such as by promising an 18-month "lease" term but

5    delivering only a "month-to-month" tenancy;

6           d. Failing to provide copies of the transaction documents to the Plaintiffs in a

7    reasonable time after the transaction, or in response to requests from the Plaintiffs;

8           e. Exploiting the Plaintiffs' financial distress and time constraints to pressure

9    the Plaintiffs into a transaction the Defendants knew was abusive and unfair;

10           f. Failing to deliver a reasonably complete and accurate disclosures of itemized

11    transaction costs, fees, payments, and other information reasonably necessary for the

12    Plaintiffs to evaluate the transaction and make an intelligent judgment about entering into

13    it within a reasonable time before the transaction took place;

14           g. Confusing the Plaintiffs as to their rights, remedies, and obligations in the terms

15    of a consumer credit transaction;

16           h. Engaging in an equity-skimming operation, contrary to RCW 61.34;

17        79. The Defendants engaged in these unfair, unconscionable, and deceptive acts

18    intentionally and purposefully, in the scope of trade or commerce and with the objective of

19    obtaining either (i) the Plaintiffs home, which was appraised at $502,000, for at most

20    $297,020.78, or (ii) to gain finance charges of more than $220,000 on loaned funds of no more

21    than $297,020.78 over 18 months time.

22        80. The Plaintiffs are entitled to damages and injunctive relief based upon Defendants'

23    serial violations of the Consumer Protection Act.  RCW 19.86.090

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1 **COUNT TEN: ENTERPRISE CORRUPTION/RACKETEERING**

2  81. As discussed above, the distressed home conveyance transaction in this case entailed

3 the extraction of usurious interest from the Plaintiffs; indeed, the effective interest rate on this

4 transaction is more than four-times the permissible interest rate under state law (RCW

5 19.52.020(1)), making the debt unlawful under the federal Racketeering-Influenced and Corrupt

6 Organizations Act (RICO). See 18 USC 1962.

7  82. A debt predicated on usurious interest is unlawful debt, and Defendants have engaged

8 in substantial efforts to collect this unlawful debt, including (i) setting up a bank account at US

9 Bank where the Plaintiffs could deposit payments, (ii) creating payment coupons for the

10 Plaintiffs to use; (iii) actually collecting at least $24,300 in interest payments from the Plaintiffs,

11 (iv) demanding that the Plaintiffs vacate their residence and forfeit same to Defendants; and (v)

12 instituting unlawful detainer proceedings against the Plaintiffs with the objective of obtaining the

13 property in satisfaction of the unlawful debt.

14  83. In addition, the Merceris—both individually and through Alternative Investors, Inc.

15 and Focus Mortgage, LLC—collected an additional $120,000 (approx.) of the Plaintiffs' home

16 equity by arranging for Defendant Pierson to obtain a $417,000 loan from Defendant GMAC,

17 directing at most $297,020.78 of those loan proceeds to retire the Plaintiffs' pre-existing

18 (Argent) mortgage note, and then appropriating (and keeping) the remaining loan proceeds.

19  84. Defendants worked together in a common enterprise and established and utilized

20 numerous corporate forms with which to carry out the fraudulent schemes involved in this

21 action, as well as other foreclosure rescue scams.

22  85. The Defendants' efforts to collect the unlawful debt constitutes racketeering and

23 enterprise corruption activities in violation of federal racketeering law. See 18 USC 1962.

24

**Northwest Justice Project**
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1  86. The Defendants' abuse of numerous connected business organizations to manage and

2 facilitate corrupt activities that exploit and financially injure vulnerable consumers is unfair and

3 contrary to the Washington Consumer Protection Act.

4 COUNT ELEVEN: COMMON LAW FRAUD/MISREPRESENTATION

5  87. The Defendants made numerous representations concerning information material to

6 the Plaintiffs' decision to enter into this transaction, including:

7   a. That the Defendants intended to help the Plaintiffs save their home from

8  foreclosure, rebuild their credit, and recover their home equity;

9   b. That the Defendants could successfully enable the Plaintiffs to save their home

10  from foreclosure, rebuild their credit, and recover their home equity because the

11  Defendants had helped "over 100 families get out from under the threat of foreclosure;"

12   c. That the Defendants would locate an investor to "hold title" to the Plaintiffs'

13  home, and that the reason for holding title was to collateralize a loan;

14   d. That Defendant Murphy Pierson, the investor who ultimately obtained legal

15  title to the Plaintiffs' home, was not previously known to or otherwise affiliated with the

16  other Defendants;

17   e. That after making "rent" payments to Defendant Pierson for 18 months, the

18  Defendants could recover title to their home by "paying off" Pierson at a price equal to

19  the amount required to retire the Argent Loan, which the Defendants knew the Plaintiffs'

20  believed to be about $285,000, when the amount actually required to retire the Argent

21  loan was actually between $290,686.58 and $297,020.78, with the amount needed to "pay

22  off" Pierson being $485,000; and

23

24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1             f. That the Plaintiffs would be able to pay off Pierson at the end of the 18 month

2          period by obtaining a loan through Defendant Focus Mortgage, LLC.

3        88. The Defendants made these representations despite knowing the contents of the

4   representations to be substantively false, or else lacking any good faith basis for believing the

5   information to be true.

6        89. The Plaintiffs reasonably relied on these representations as part of their decision to

7   enter into the distressed home conveyance transaction with the Defendants, causing the Plaintiffs

8   to suffer injuries.

9        90. The Defendants are liable to the Plaintiffs for damages resulting from their material

10  misrepresentations, which were made recklessly and/or maliciously and with the intent to

11  defraud the Plaintiffs.

12       91. In the alternative, the Defendants made the misrepresentations at least negligently,

13  and are liable to the Plaintiffs on the theory of negligent misrepresentation.

14  **RELIEF REQUESTED**

15       Based on all of the foregoing paragraphs, the Plaintiffs request the following relief:

16       92. Rescission of all the above-described transactions and an order of quiet title restoring

17  title of 5623 - 129th Avenue SE, Bellevue, Washington, to Karen Handlin and Maxine Fortune, in

18  their proper shares, together with cancellation of all liens, encumbrances, notes and other claims

19  upon the property, save for an equitable lien in whatever amount the Court finds Defendants

20  advanced on the Plaintiffs' behalf, less damages to which the Plaintiffs are entitled;

21       93. Cancellation of any and all notes, loans, debts, or security interests, or other

22  obligations claimed upon the Plaintiffs personally or their property, arising out of the conduct

23  and documents alleged in this complaint, or derived therefrom;

24

FIRST AMENDED COMPLAINT - 23

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

1    94. An order requiring the Defendants to deliver forthwith into the Court all copies of

2    which Defendants have actual or constructive knowledge of any deeds, promissory notes, or

3    other documents purporting to convey, encumber, or otherwise affect the Plaintiffs' land, or

4    granting or affecting the authority of any other person to act on the Plaintiffs' behalf;

5    95. Damages in whatever amount this Court shall find appropriate to compensate the

6    Plaintiffs for the losses they have suffered;

7    96. All statutory damages to which the Plaintiffs are entitled under the Washington

8    Consumer Protection Act, Usury Statute, TILA, RESPA, RICO, and any other applicable laws;

9    97. All costs of this litigation;

10    98. An award of treble or other exemplary damages in whatever amount the Court shall

11    find appropriate under relevant statutory, regulatory, and common law authority;

12    99. A permanent injunction prohibiting the Defendants from ever again engaging in

13    residential real estate or mortgage transactions on behalf of other persons in the State of

14    Washington, and ordering Defendants to publish a copy of the injunction to all of its present and

15    former clients at Defendants' own expense;

16    100. Leave to record the judgment with the King County Recorder's Office as may be

17    necessary; and

18    101. Such other relief as the Court may find appropriate in the interests of justice.

19    RESPECTFULLY SUBMITTED this 1st day of December, 2008.

20    **NORTHWEST JUSTICE PROJECT**

21

By:_____

22    Eric Dunn, WSBA #36622
Attorney for Brian & Karen Handlin

23

24

FIRST AMENDED COMPLAINT - 24

Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519 Fax: (206) 624-7501

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| KAREN HANDLIN, BRIAN HANDLIN, and MAXINE FORTUNE | No. 08-2-38667-8 SEA . |
| Plaintiffs, | SUMMONS (20 Day) |
| vs. | |
| MURPHY PIERSON, MICHELLE MERCERI, KATHERINE MERCERI, ALTERNATIVE INVESTORS, INC., FOCUS MORTGAGE, LLC, AZ-WA INVESTORS (a partnership) | |
| Defendants. | |

TO:    THE DEFENDANTS ABOVE NAMED:

A lawsuit has been started against you in the above-entitled Court by Karen Handlin,

Brian Handlin, and Maxine Fortune, the above-named Plaintiffs. The Plaintiffs' claims are

stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your

defense in writing, and serve a copy upon the undersigned attorney for the Plaintiffs within

twenty (20) days after the service of this summons, excluding the day of service, or a default

SUMMONS – PAGE 1 OF 2



Northwest Justice Project
401 Second Avenue S, Suite 407
Seattle, Washington 98104
Phone: (206) 464-1519  Fax: (206) 624-7501

1    judgment may be entered against you without notice. A default judgment is one where the

2    Plaintiffs are entitled to what they asked for because you have not responded. If you serve a

3    notice of appearance on the undersigned attorneys, you are entitled to notice before a default

4    judgment may be entered.

5        You may demand that the Plaintiffs file this lawsuit with the court. If you do so the

6    demand must be in writing and must be served upon the person signing this summons. Within

7    fourteen (14) days after you serve the demand, the Plaintiffs must file this lawsuit with the court,

8    or the service on you of this summons and complaint will be void.

9        If you wish to seek the advice of an attorney in this matter, you should do so promptly so

10   that your written response, if any, may be served on time.

11       THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

12   State of Washington.

13       DATED this 1st day of December, 2008.

14

15                           NORTHWEST JUSTICE PROJECT

16

17                           Eric Dunn, WSBA #36622

18                           Attorneys for Karen & Brian Handlin
                             401 Second Avenue South, Suite 407
19                           Seattle, WA 98104
                             (206) 464-1519, ext. 234
20                           EricD@nwjustice.org

21

22

23

24   SUMMONS – PAGE 2 OF 2

# EXHIBIT C

1

2

3

4

5

6          IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
           IN AND FOR THE COUNTY OF KING

7

8   KAREN HANDLIN, BRIAN HANDLIN, and        NO. 08-2-38667-8SEA
    MAXINE FORTUNE,
9                                            NOTICE TO ADVERSE PARTY
                        Plaintiffs,          OF REMOVAL TO FEDERAL
10                                           COURT
    v.
11
    MURPHY PIERSON; MICHELLE MERCERI;
12  KATHERINE  MERCERI;  ALTERNATIVE
    INVESTORS, INC.; FOCUS MORTGAGE,
13  LLC; AZ-WA INVESTORS (a partnership);
    RECONTRUST  COMPANY,  N.A.;  and
14  GMAC MORTGAGE CORPORATION,

15                      Defendants.

16

17  TO:         CLERK OF THE ABOVE ENTITLED COURT

18  AND TO:     ERIC DUNN, Attorney for Plaintiffs:

19      NOTICE IS HEREBY GIVEN that on December 31, 2008, defendant GMAC

20  Mortgage Corporation, ("Defendant") filed a Notice of Removal and supporting documents in

21  the United States District Court for the Western District of Washington at Seattle, pursuant to

22  28 U.S.C. § 1446(a). A copy of the Notice of Removal is attached hereto as Exhibit A.

23      PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), the filing

24  of the Notice of Removal, together with a filing of a copy of this notice, effects removal of this

25  action and this Court may not proceed further unless and until the action is remanded.

NOTICE TO ADVERSE PARTY OF                    BISHOP, WHITE & MARSHALL, P.S.
REMOVAL TO FEDERAL COURT - 1                  720 OLIVE WAY, SUITE 1301
                                              SEATTLE, WASHINGTON 98101-1801
                                              206/622.5306 FAX:206/622.0354

1    DATED this 31st day of December, 2008.

2                                  BISHOP, WHITE & MARSHALL, P.S.

3

4    _____
                                   David A. Weibel, WSBA # 24031
5                                  Attorneys for
                                   Defendant GMAC Mortgage Corporation
6

7

8

9

10

11

12                          **DECLARATION OF SERVICE**

13        I hereby declare under penalty of perjury of the laws of the State of Washington and the
     United States of America that on this 31st day of December, 2008, I caused to be delivered a copy
14   of the foregoing Notice to Adverse Party of Removal to Federal Court to the following in the
     manner indicated:

15
     Eric Dunn                                    [ ] By United States Mail
16   Northwest Justice Project                    [X] By Legal Messenger
     401 Second Avenue S., Suite 407              [ ] By Federal Express
17   Seattle, WA  98104                           [X] By Hand Delivery

18        Signed this 31st day of December, 2008 at Seattle, Washington.

19                                  _____
                                   Angela Craig
20

21

22

23

24

25