1

2

3                                                    The Honorable John C. Coughenour

4

5

6

7                    UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9   KAREN HANDLIN, BRIAN HANDLIN, and          No. C08-1861-JCC
    MAXINE FORTUNE,
10
               Plaintiffs,
11
        v.
12
    MURPHY PIERSON, MICHELLE MERCERI,
13  KATHERINE MERCERI, ALTERNATIVE              GMAC MORTGAGE
    INVESTORS, INC. (a partnership), FOCUS      CORPORATION'S OPPOSITION TO
14  MORTGAGE, LLC, AZ-WA INVESTORS (a           PLAINTIFFS' MOTION FOR
    partnership), RAINIER TITLE, LLC, GMAC      PARTIAL SUMMARY JUDGMENT
15  MORTGAGE CORPORATION, MARK
    MERCERI, JAMES AYLESWORTH, and
16  SEAN "CASEY" JONES,

17             Defendants.

18

19          I. OVERVIEW OF OPPOSITION TO RELIEF REQUESTED

20          Plaintiffs claim they are victims.  Yet, they are now trying to victimize Defendant

21  GMAC Mortgage Corporation ("GMAC") by asking the Court to bail them out from a mess

22  they helped to create.  Plaintiffs' argument for creating an equitable mortgage is a stretch at

23  best and certainly should not happen on summary judgment.

24          GMAC requests the Court deny plaintiffs' motion for partial summary judgment and

25  enter its proposed order.  Plaintiffs are not entitled to a judgment creating an equitable

GMAC MORTGAGE CORPORATION'S OPPOSITION TO          **Williams, Kastner & Gibbs PLLC**
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -   601 Union Street, Suite 4100
1                                                   Seattle, Washington 98101-2380
                                                    (206) 628-6600

2759865.1

mortgage that removes GMAC's security interest from record title to the subject property where genuine issues of material fact exist regarding whether GMAC is a *bona fide* encumbrancer who possessed no actual knowledge or constructive notice of plaintiffs' claimed interest in the property. Moreover, plaintiffs' requests for equitable relief are not justified where their actions caused their own misfortune. GMAC should not be summarily forced to absorb losses attributable to plaintiffs' reckless pursuit of a "rescue" deal that was obviously too good to be true, without a trial on the merits. In the alternative, GMAC requests the Court continue the hearing on plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56(f), so that GMAC can conduct additional discovery necessary to obtain affidavits in opposition to plaintiffs' motion.

## II. COUNTER-STATEMENT OF FACTS

Plaintiffs' statement of facts contains a lengthy recitation of every alleged wrongdoing committed by Alternative Investors, Inc. ("Alternative Investors") and the defendants who managed the entity. However, most of those facts are immaterial since plaintiffs do not allege that GMAC knew about every alleged bad act. GMAC's counter-statement contains the facts material to the Court's determination of (1) whether GMAC possessed constructive notice of plaintiffs' claims to the subject property, and (2) plaintiffs contributions to their own misfortune.

A.      Facts Showing the Absence of Constructive Notice to GMAC

        *1.      GMAC Did Not Originate the Pierson Loan.*

Plaintiffs fundamentally misrepresent GMAC's role in the $417,000 home loan transaction that enabled Murphy Pierson to buy the subject property from the plaintiffs. As explained in the following paragraphs, GMAC did not loan money to Pierson, correspond with him in any way, control the origination of the loan to Pierson, prepare any of the loan documents signed by the parties, or participate in the loan closing. Nor did GMAC engage

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    MortgageClose.com to make the loan on GMAC's behalf.  GMAC is a *bona fide* purchaser of

2    the note and of the assignment of the deed of trust plaintiffs granted to MortgageClose.com.

3    On October 11, 2007, Murphy Pierson executed a promissory note in favor of

4    MortgageClose.com in which he promised to repay a principal balance of $417,000.00 (the

5    "Note").  *See* Exhibit A to the Declaration of Edward Muscovitch.  The Note was secured by a

6    deed of trust recorded on October 19, 2007 under King County Auditor's File Number

7    ("AFN") 20071019000764 (the "Deed of Trust").  Ex. B to the Decl. of E. Muscovitch.  The

8    Deed of Trust identifies MortgageClose.com as the holder of the beneficial interest and

9    describes the subject property, commonly known as 5623 129th Avenue SE, Bellevue, WA

10   98006 (the "Property").  *Id.*

11   The loan to Pierson closed on October 19, 2007, when MortgageClose.com wired

12   $417,330.31 in loan principal to defendant Rainier Title, LLC.  Plaintiffs' Motion for Summary

13   Judgment, p. 9.   On October 23, 2007, Rainier Title disbursed $297,020.78 of the

14   MortgageClose.com loan funds to pay off plaintiffs' debt, held by Citi Residential Lending.

15   *Id., and* Exhibit 1 to the Declaration of Marshall Ferguson.  Plaintiffs' debt to Citi Residential

16   Lending was secured by a deed of trust originally granted to Argent Mortgage Company, LLC

17   and recorded on November 4, 2004 under AFN 20041104001629.  Ex. 2 to the Decl. of M.

18   Ferguson.

19   On October 24, 2007, GMAC purchased the Note and an assignment of

20   MortgageClose.com's beneficial interest in its Deed of Trust.  Decl. of E. Muscovitch, ¶ 9.

21   GMAC paid MortgageClose.com valuable consideration for the Note and assignment.[1]   *Id.*

22   GMAC then sold the Note and assigned its beneficial interest in the Deed of Trust to Fannie

23   Mae, the current owner of the Pierson loan.  *Id.*  GMAC remains as the servicer for Pierson's

24

---

25   [1] The exact amount GMAC paid is proprietary information that will be revealed at trial after the Court has issued
appropriate protective relief.  Decl. of E. Muscovitch, ¶ 9.

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.2

1 | loan and is authorized by agreement to exercise Fannie Mae's right to foreclose and to

2 | otherwise protect Fannie Mae's beneficial interest in the Deed of Trust. *Id.*

3 | MortgageClose.com is not an agent of GMAC. Decl. of E. Muscovitch, ¶ 10 and Decl.

4 | of C. Lam, ¶ 13. GMAC does not direct MortgageClose.com employees to take any actions

5 | with respect to loans that MortgageClose.com originates. Decl. of E. Muscovitch, ¶ 10.

6 | GMAC issues and publishes criteria for the loans it agrees to purchase. *Id.* By agreement, if

7 | GMAC finds that MortgageClose.com's loan meets certain criteria, then GMAC will purchase

8 | the loan. *Id.* Although GMAC and MortgageClose.com agree upon the criteria, GMAC does

9 | not control how MortgageClose.com employees originate loans that will meet the criteria for

10 | purchase by GMAC. *Id.* MortgageClose.com is free to disregard GMAC's criteria and not sell

11 | any loans to GMAC. *Id.* Borrowers who enter into loan transactions with MortgageClose.com

12 | do not contract with GMAC and GMAC has no contact with such borrowers prior to

13 | purchasing any loans from MortgageClose.com. *Id.*

14 |          2.    *Loan Documents Indicated That Plaintiffs Were Selling the Property to Pierson and That Pierson Would Occupy the Property.*

15 |

16 | The loan documents available to GMAC at the time it purchased the Note indicated that

17 | plaintiffs' transaction with Pierson was nothing more than a home sale between a purchaser

18 | and a seller. Decl. of E. Muscovitch, ¶ 17, *and* Decl. of C. Lam, ¶ 16. The Real Estate

19 | Purchase and Sale Agreement ("REPSA") included in MortgageClose.com's loan origination

20 | file unambiguously identifies Murphy Pierson as the "purchaser" and Karen Fortune and

21 | Maxine Fortune as the "sellers." Ex. C to the Decl. of E. Muscovitch. The REPSA lists a

22 | "purchase" price of $465,000. *Id.* The REPSA bears the signatures of the purchaser and seller,

23 | dated September 11, 2007, and there is no doubt regarding the authenticity of those signatures.

24 | Plaintiffs contend that a version of the REPSA exists containing an addendum referencing

25 | terms of a sale-leaseback transaction. Pltfs.' Mot. for Summ. Jmt., p. 20. However, two

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   witnesses with personal knowledge state that the version of the REPSA contained in the

2   MortgageClose.com loan origination file <u>did</u> <u>not</u> contain an addendum referencing a sale-lease

3   back transaction.  Decl. of E. Muscovitch, ¶ 5, *and* Decl. of C. Lam, ¶ 7.  Plaintiffs offer no

4   evidence whatsoever as to when the alleged addendum was created, how and when it was

5   added to the REPSA, and whether GMAC ever received a copy of the addendum prior to

6   acquiring its interest in the Property.  In addition, plaintiffs offer the alleged addendum into

7   evidence not through the affidavit of a witness with personal knowledge, but through their

8   counsel's declaration.  *Id.*

9          Similarly, the HUD-1 Settlement Statement available to GMAC at the time it purchased

10  the Note is not the same version proffered by plaintiffs in their motion.  Plaintiffs' version,

11  which is not signed by them, indicates that sale proceeds of $143,720.60 would be disbursed to

12  Alternative Investors.  *See* Attachment 12 to the Declaration of Eric Dunn Regarding Exhibits

13  to Motion for Partial Summary Judgment.  By contrast, the version provided to GMAC shows

14  that <u>plaintiffs</u> would receive $148,700.80 upon closing.  Ex. D to the Decl. of E. Muscovitch.[2]

15  Interestingly, the version of the HUD-1 offered by plaintiffs shows that they paid $1,263.24 to

16  procure a policy of title insurance for Pierson, insuring that he would have marketable title to

17  plaintiffs' house upon closing.  Attmt. 12 to the Decl. of E. Dunn.[3]

18         The REPSA and the HUD-1 were not the only documents confirming a routine

19  purchase and sale.  On October 11, 2007, plaintiffs Karen Handlin, Brian Handlin, and Maxine

20  Fortune executed a statutory warranty deed conveying fee simple title to the Property to

21  Pierson.  Ex. E to the Decl. of E. Muscovitch.  Plaintiffs and Pierson also signed escrow

22  instructions directing the closing officer to "record and deliver documents as necessary to close

23  the transaction."  Ex. F to the Decl. of E. Muscovitch.  Predictably, the closing officer recorded

24

25  [2] *See* Line Item 603 of the HUD-1, entitled "CASH TO SELLER" at the bottom, right-hand corner of the first page.
    [3] *See* Line Item 1108 of the HUD-1, entitled "Title Insurance" on the second page.

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
5

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1  the warranty deed on October 19, 2007 under AFN 20071019000763, thus putting the world on

2  notice that plaintiffs conveyed fee simple title to the Property to Pierson.

3      GMAC anticipated selling the Pierson loan to Fannie Mae.  Decl. of E. Muscovitch,

4  ¶ 11.  A Fannie Mae Desktop Underwriter findings report identified one red flag regarding

5  Pierson's intent to occupy the property as his principal residence.  *Id.*  MortgageClose.com had

6  already obtained an Occupancy and Financial Status Affidavit signed by Mr. Pierson under

7  oath and penalty of perjury on October 12, 2007.  Decl. of C. Lam, ¶ 14 *and* Ex. G to the Decl.

8  of E. Muscovitch.  The affidavit states that Mr. Pierson intended to occupy the Property within

9  sixty days after signing the Deed of Trust (*i.e.*, by December 11, 2007).  *Id.*  To address the red

10  flag, MortgageClose.com requested and obtained a "Motivation Letter" from Pierson

11  explaining his reasons for purchasing plaintiffs' house and moving to Bellevue, Washington.

12  Decl. of E. Muscovitch, ¶ 13, *and* Decl. of C. Lam, ¶ 15.  Pierson wrote: "I have decided to

13  move to a nicer/more expensive property that is in a much nicer area.  [...]  The eastside school

14  district is one of the best.  My girlfriend will be moving in with me and her child is already in

15  that district."  Ex. H to the Decl. of E. Muscovitch.  Two witnesses with substantial residential

16  mortgage lending experience have testified that requesting and relying upon both an affidavit

17  of occupancy and a motivational letter is consistent with the industry standard for verifying a

18  borrower's intent to occupy a property.  Decl. of E. Muscovitch, ¶ 13, *and* Decl. of C. Lam,

19  ¶ 15.

20      B.    Facts Showing Plaintiffs Caused Their Own Misfortune

21      Plaintiff Karen Handlin admits that she performed almost no investigation of

22  Alternative Investors and its methods prior to signing a raft of documents affecting the title to

23  her house.  Instead, she relied entirely upon the advice of Michelle Merceri of Alternative

24  Investors.  Ms. Handlin commenced her research by reading the advertisement card that

25  Alternative Investors mailed to her.  Ex. 3 to the Decl. of M. Ferguson (Transcript of the

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
6

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    Deposition of Karen Handlin), pp. 34-35. She then phoned Ms. Merceri and told her she knew

2    nothing about what Alternative Investors did. *Id.* Merceri told Handlin that the company had

3    existed for three years and provided Handlin a short list of references. *Id.* Ms. Handlin

4    concluded her research as follows:

5           I went on the Better Business Bureau there was nothing listed either negative or
            positive, any form about [Alternative Investors]. I looked online, could find
6           nothing posted anywhere that was negative about them. I called her references
            and they verified they worked with her. They wouldn't tell me what capacity. It
7           was like checking job references, where yes, the person has worked for me but
            wouldn't tell me anything more than that. Yes, we worked with her and we
8           would work with her again. And that was all they would tell me but I didn't know
            what capacity, so decided to go with them.
9

10   *Id.* After finding nothing about Alternative Investors online, Ms. Handlin learned nothing from

11   the references she phoned. Armed with no information, plaintiffs proceeded to sign a real

12   estate purchase and sale agreement, and a statutory warranty deed stating clearly that title to

13   their house would go to Pierson. They signed escrow instructions directing the closing officer

14   to record the warranty deed. There can be no dispute that plaintiffs knew that they were selling

15   and deeding their house to Pierson. Karen Handlin admits she simply "assumed" Pierson

16   would hold the title in trust for the plaintiffs until they bought the Property back. Ex. 3 to the

17   Decl. of M. Ferguson, p. 108.

18         Plaintiffs relied solely upon the advice of Michelle Merceri and made spectacular

19   assumptions – contrary to the documents they signed – about how the transaction with

20   Alternative Invertors would unfold. By contrast, only highly disputed facts in the record

21   support plaintiffs' contention that GMAC caused plaintiffs' damages. None of the evidence

22   proffered by plaintiffs supports the conclusion that GMAC is not a *bona fide*

23   purchaser/encumbrancer.

24   ///

25   ///

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
7

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    C.    The Loan Money Paid Off Prior Encumbrances

2        A shown above, the loan to Pierson paid off prior encumbrances and cleared title to the

3    Property.  Plaintiffs want the Court to ignore the fact that the Pierson loan paid off $297,020.78

4    in debt secured by a prior deed of trust recorded on November 4, 2004.

5    D.    Plaintiffs Have Been Living in the Property Rent-Free

6        Plaintiffs do not dispute that they have resided at the Property rent-free and payment-

7    free since August 2008 and now they ask the Court to clear their title of secured debt.

8                    III.  ISSUES PRESENTED

9        1.    Whether plaintiffs are entitled to an order declaring that GMAC is not a *bona*

10   *fide* encumbrancer where facts in the record support the reasonable conclusion that GMAC

11   paid full value and had no constructive notice of plaintiffs' off-record claim to an equitable

12   interest in the Property.

13       2.    Whether plaintiffs are entitled to an order declaring that their statutory warranty

14   deed to Murphy Pierson is an equitable mortgage and terminating GMAC's security interest in

15   the Property, where facts in the record support the reasonable conclusion that GMAC is a *bona*

16   *fide* encumbrancer without actual knowledge or constructive notice.

17       3.    Whether plaintiffs are entitled to an order, in equity, declaring that their

18   statutory warranty deed to Murphy Pierson is an equitable mortgage terminating GMAC's

19   security interest in the Property where the evidence viewed in a light most favorable to GMAC

20   shows that the plaintiffs were a cause of their own misfortune.

21       4.    Whether the Court should order plaintiffs to pay rent into the Registry of the

22   Court during the pendency of the proceedings where it is undisputed that: (a) plaintiffs have

23   been residing at the Property rent-free since August 2008, (b) one or more of the defendants

24   paid off $297,020.78 in prior debt owed by plaintiffs on the Property, and (c) no claim asserted

25

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
8

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1  in plaintiffs' lawsuit could possibly entitle them to the Property free of any debts and

2  encumbrances whatsoever.

3       5.     Whether GMAC is entitled to a continuance of the summary judgment hearing

4  pursuant to FRCP 56(f) where: (a) plaintiffs' claim for an equitable mortgage is based

5  substantially upon plaintiff Karen Handlin's recollection of hearsay statements made by

6  defendant Michelle Merceri, whose deposition has yet to be taken, and (b) plaintiffs' counsel

7  has offered his own opinion testimony into the record on summary judgment regarding the

8  "reasonableness" of GMAC's actions and GMAC has not had the opportunity to depose

9  counsel regarding the bases for his opinions.

10  IV.  <u>EVIDENCE RELIED UPON</u>

11       GMAC relies for its opposition to plaintiffs' motion upon the Declaration of Edward

12  Muscovitch (with Exhibits A through H attached thereto), the Declaration of Chau (Joe) Lam

13  (with Exhibit A attached thereto), the Declaration of David A. Weibel, and the Declaration of

14  Marshall Ferguson (with Exhibits 1 through 3 attached thereto), and the record before the

15  Court.

16  V.  <u>ARGUMENT AND AUTHORITY</u>

17       A.    <u>Legal Standard Governing Summary Judgment Motion</u>

18       A summary judgment motion should be granted only "if the pleadings, the discovery

19  and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

20  material fact and that the movant is entitled to a judgment as a matter of law." FRCP 56(c)(2).

21  The court must view all facts and reasonable inferences in a light most favorable to the

22  nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty*

23  *Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

24  1996). A genuine issue of material fact exists where there is sufficient evidence for a

25  reasonable factfinder to find for the non-moving party. *Anderson*, 477 U.S. at 248. The

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
9

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    inquiry is "whether the evidence presents a sufficient disagreement to require submission to a

2    [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at

3    251-52.   The moving party bears the burden of showing that there is no evidence which

4    supports an essential element to the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S.

5    317, 322 (1986).   If the movant meets this burden, the nonmoving party then must show that

6    there is, in fact, a genuine issue for trial. *Anderson*, 477 U.S. at 250.

7        B.    A Reasonable Factfinder Should Conclude That GMAC Is a *Bona Fide*
              Encumbrancer Who Lacked Constructive Notice of Plaintiffs' Claims to the
8             Property.

9        Plaintiffs agree that a "critical question" is whether GMAC had constructive notice of

10   their claims when GMAC purchased the Note on October 24, 2007. Pltfs.' Mot. for Summ.

11   Jmt., p. 18.  Plaintiffs further grant that "what GMAC knew is a factual question." *Id.*

12   Plaintiffs must therefore concede that the Court cannot grant summary judgment to them if a

13   reasonable fact finder could conclude that GMAC did not have constructive notice of

14   plaintiffs' claim of an equitable interest in the Property.  That is precisely what GMAC's file

15   documents and testimony demonstrate.

16       Under Washington's *bona fide* purchaser/encumbrancer doctrine, a person has a

17   superior interest in property that he or she purchases (1) for value, (2) in good faith, and (3)

18   without actual knowledge or constructive notice of another's interest in the property. *Levien v.*

19   *Fiala*, 79 Wn. App. 294, 298, 902 P.2d 170 (1995).  A purchaser is not bound to assume that

20   his seller is a wrongdoer and may rely upon record title when purchasing property. *Hendricks*

21   *v. Lake*, 12 Wn.App. 15, 20-21, 528 P.2d 491 (1974).  Similarly, "[a]n encumbrancer, without

22   notice of existing equities, may rely on the record chain of title, and, in the absence of notice, is

23   not bound to go outside the records to inquire about them." *Diimmel v. Morse*, 36 Wn.2d 344,

24   218  P.2d  334  (1950).    Constructive  notice,  if  proven,  can  defeat  a  *bona fide*

25

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
10

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1   purchaser/encumbrancer claim. *South Tacoma Way, LLC v. State*, 146 Wn.App. 639, 652, 191

2   P.3d 938 (2008). Constructive notice may be imparted by the public record or by inquiry

3   notice. *Id*. Plaintiffs assert three bases for constructive notice to GMAC: inquiry notice, the

4   public record, and agency. Pltfs.' Mot. for Summ. Jmt., p. 19. All three fail because contrary

5   facts, testimony, and reasoning enable a factfinder to conclude that GMAC did not receive any

6   constructive notice in any form.

7        *1.   Inquiry Notice*

8        Under the inquiry notice rule, "knowledge of facts sufficient to excite inquiry is

9   constructive notice of all that the inquiry would have disclosed." *Casa del Rey v. Hart*, 110

10  Wn.2d 65, 71, 750 P.2d 261 (1988) (quoting *Peterson v. Weist*, 48 Wash. 339, 341, 93 P. 519

11  (1908)). Plaintiffs contend that three facts were sufficient to excite inquiry by GMAC.

12       First, plaintiffs point out that they were occupying the premises on October 24, 2007,

13  when GMAC acquired its interest in the Property. According to plaintiffs, this fact should

14  have excited inquiry by GMAC because their occupancy was "inconsistent" with the purchase

15  sale agreement and with Pierson's stated interest to occupy the home as his principal residence.

16  Pltfs.' Mot. for Summ. Jmt., pp. 19, 22.

17       Occupancy means nothing. It is not uncommon for change of possession to be delayed

18  for days or weeks due to a variety of reasons, including delay of the sellers' acquisition of new

19  housing, delay of repairs to the home negotiated as a condition of sale, difficulty disposing of

20  chattels on the land, *et cetera*. Decl. of E. Muscovitch, ¶ 15. In some cases, sellers will pay

21  *per diem* rent to the purchaser as compensation for remaining in the property. *Id*. Such

22  arrangements are neither sinister nor unusual. Plaintiffs' occupancy is therefore insufficient

23  because it can be interpreted in multiple ways. Moreover, the declaration testimony of Edward

24  Muscovitch creates a genuine issue of material fact as to whether plaintiffs' presence at the

25  Property on October 24, 2007, when GMAC bought the Note, was sufficient to excite further

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
11

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    inquiry by GMAC into plaintiffs' equitable interest in the Property.   Plaintiffs offer no

2    testimony from a qualified expert with knowledge of the facts opining that plaintiffs' presence

3    at the Property would have excited the inquiry of a reasonably prudent mortgage lender in

4    GMAC's position.   Instead, plaintiffs seem to expect that the Court will leap to such a

5    conclusion on its own.

6        Second, plaintiffs argue that a lease addendum in the REPSA contained self-evident

7    terms of a sale-leaseback transaction. Pltfs.' Mot. for Summ. Jmt., p. 20.  As noted above, two

8    witnesses with personal knowledge have testified that the version of the REPSA contained in

9    the MortgageClose.com loan origination file available to GMAC on October 24, 2007 did not

10   contain an addendum referencing a sale-lease back transaction.   Decl. of E. Muscovitch, ¶ 5,

11   *and* Decl. of C. Lam, ¶ 7.   Therefore, a genuine issue of material fact exists regarding the

12   addendum and GMAC's knowledge of it.   Plaintiffs offer no evidence showing when the

13   alleged addendum was created, how and when it was added to the REPSA, and whether

14   GMAC ever received a copy of the addendum prior to acquiring its interest in the Property.  In

15   addition, plaintiffs offer the alleged addendum into evidence not through the affidavit of a

16   witness with personal knowledge of the document, but through their counsel's declaration,

17   which is insufficient for introducing the document into evidence.  *Id., and see* Fed.R.Civ.P.

18   56(e)(1)("A supporting or opposing affidavit must be made on personal knowledge, set out

19   facts that would be admissible in evidence, and show that the affiant is competent to testify on

20   the matters stated.")

21       Third, plaintiffs argue that a "red flag" shown in a Fannie Mae report indicated that

22   Pierson owned other residential property, which should have spurred MortgageClose.com or

23   GMAC to inquire whether he intended to occupy the Property. Pltfs.' Mot. for Summ. Jmt., p.

24   22. Plaintiffs insist that neither MortgageClose.com nor GMAC ever did anything about the

25   red flag.  *Id.*, pp. 9, 22.  Plaintiffs' argument here depends upon a sleight of hand.  By using a

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
12

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    "run date" printed on the Fannie Mae report, plaintiffs imply, without foundation, that the red

2    flag regarding occupancy arose *for the first time* on October 17, 2007. They then assert that

3    "neither GMAC nor Mortgageclose.com took any further steps to verify Pierson's intent to

4    occupy" after October 17. *Id.*, p. 9. The problem for plaintiffs is that no evidence establishes

5    what a "run date" is or when the red flag regarding occupancy actually arose. Once again,

6    plaintiffs offer the Fannie Mae report into evidence not through the affidavit of a witness with

7    personal knowledge of the report, but through their counsel's declaration. The report is not

8    only inadmissible hearsay, it cannot support a summary finding of constructive notice because

9    plaintiffs' counsel has no personal knowledge as to who authored the report, how the red flag

10    system operates, what a run date is, or when MortgageClose.com or GMAC were first made

11    aware of the red flag. Decl. of E. Dunn, ¶ 22.

12        Two witnesses have testified by declaration that Pierson's "Motivation Letter," dated

13    two days earlier, addresses the red flag. Decl. of E. Muscovitch, ¶ 13, *and* Decl. of C. Lam,

14    ¶ 15. Plaintiffs offer no admissible evidence to the contrary. MortgageClose.com had already

15    obtained an Occupancy and Financial Status Affidavit signed by Mr. Pierson under oath and

16    penalty of perjury on October 12, 2007. Decl. of C. Lam, ¶ 14 *and* Ex. G to the Decl. of E.

17    Muscovitch. The affidavit stated that Mr. Pierson intended to occupy the Property within sixty

18    days after signing the Deed of Trust (*i.e.*, by December 11, 2007, ten days after GMAC

19    acquired its interest in the Property). Witnesses Muscovitch and Lam, both of whom possess

20    substantial residential mortgage lending experience, state that requesting and relying upon an

21    affidavit of occupancy and a motivational letter is consistent with the industry standard for

22    verifying a borrower's intent to occupy a property. Decl. of E. Muscovitch, ¶ 13, *and* Decl. of

23    C. Lam, ¶ 15.

24        Out of nowhere, plaintiffs then claim that "a reasonable inquiry" by

25    MortgageClose.com or GMAC would have entailed not just looking into Pierson's intentions,

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    but contacting plaintiffs directly, prior to taking the assignment of the Deed of Trust, in order

2    to ask them whether they planned on moving out of the Property. Pltfs.' Mot. for Summ. Jmt.,

3    p. 23, fn 24. Plaintiffs cite no authority for this proposition and offer no testimony from any

4    person qualified to opine about the reasonableness of actions taken or not taken by an entity in

5    GMAC's shoes. Plaintiffs' "reasonableness" analysis is instead based upon the bare assertion

6    of their legal counsel. *Id.* Counsel's unqualified testimony is insufficient to satisfy plaintiffs'

7    burden of proving that no genuine issue of material fact exists. A reasonable factfinder could

8    and should conclude that MortgageClose.com and GMAC met the industry standard for

9    verifying a borrower's intent to occupy a property, and that GMAC therefore had no

10   constructive notice that Pierson never intended to occupy the Property.

11              2.    *Public Record Notice*

12          Constructive notice may be imparted by the public record consisting of documents

13   recorded in a county auditor's office. In this case, plaintiffs point out that a notice of trustee's

14   sale was recorded on July 25, 2007 under AFN 20070725001484. Pltfs. Mot. for Summ. Jmt.,

15   p. 21 *and* Attmt. 1 to the Decl. of E. Dunn. The notice stated that a trustee's sale of the

16   Property was scheduled to occur on November 9, 2007. *Id.* Plaintiffs assume that the

17   existence of the notice was "significant" because GMAC presumably possessed general

18   knowledge about foreclosure rescue scams. Pltfs. Mot. for Summ. Jmt., p. 21. However,

19   nowhere do plaintiffs claim that the notice of trustee's sale furnished GMAC with constructive

20   notice of anything related to the purchase and sale transaction between plaintiffs and Pierson.

21   Nor do plaintiffs offer any opinion testimony or legal authority that the existence of a notice of

22   trustee's sale in the public record imparts constructive knowledge retroactively if the

23   transaction turns out to have been a scam. Plaintiffs do not even argue that the notice of

24   trustee's sale triggered a duty to inquire into any specific term or condition of the Pierson loan.

25

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
14

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    In fact, plaintiffs tacitly admit that the notice of trustee's sale, by itself, did not impart

2    constructive notice of anything relevant to the Pierson loan.  Rather, plaintiffs assert:

> Against this backdrop [of GMAC's presumed general knowledge of foreclosure
> rescue scams], notice that the plaintiffs were facing foreclosure <u>and</u> that all
> proceeds from the sale of their home would be transferred to Alternative
> Investors, <u>combined with</u> the suspicious language of the purchase and sale
> contract addendum, would have [...] prompted a diligent inquiry.

6    Pltfs.' Mot. for Summ. Jmt., p. 22, lines 5-9 (emphasis added).  In other words, even though

7    plaintiffs cannot explain how the notice of sale imparts constructive notice of anything, the

8    Court should nonetheless conclude that the notice of trustee's sale, plus the disputed HUD-1,

9    plus the disputed addendum, equals constructive notice.  Plaintiffs' argument does not make

10   sense.

11       The existence of a notice of trustee's sale is common not only in foreclosure rescue

12   scenarios, but also in "short sales" of property, where the property owner and lender agree to

13   try to sell the property for less than the owner owes.  Decl. of E. Muscovitch, ¶ 16.  As such, a

14   notice of trustee's sale in the public record, alone, indicates virtually nothing about the

15   circumstances of a proposed sale.  *Id.*  For that reason, the notice of trustee's sale recorded on

16   July 25, 2007 did not provide any meaningful information to GMAC regarding the Pierson

17   loan transaction.

18                    *3.    Agency*

19       Either intentionally or due to a misunderstanding, plaintiffs blatantly misrepresent to

20   the Court the nature of the relationship between GMAC and MortgageClose.com, neither of

21   whom is an agent of the other.  The burden of establishing an agency relationship rests with the

22   party asserting its existence.  *Moss v. Vadman*, 77 Wn.2d 396, 403, 463 P.2d 159 (1969).  As

23   acknowledged by plaintiffs, such a relationship may arise "when one engages another to

24   perform a task for the former's benefit."  *O'Brien v. Hafer*, 122 Wn.App. 279, 281, 93 P.3d

25   930 (2004), *review denied*, 153 Wn.2d 1022 (2005).  The critical factor is the right to control

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
15

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    the agent's acts, not the exercise of the right. *O'Brien*, 122 Wn.App. at 284. The existence of

2    an agency relationship and the right to control are questions of fact for the jury, unless there

3    can be only one reasonable conclusion drawn from undisputed facts. *Id.*

4        A genuine issue of material fact exists regarding whether MortgageClose.com was an

5    agent of GMAC in the Pierson loan transaction. According to witnesses Edward Muscovitch

6    of GMAC and Chau (Joe) Lam of MortgageClose.com, MortgageClose.com originates the

7    loan. *See* Decl. of E. Muscovitch, ¶ 10 and Decl. of C. Lam, ¶ 13. By agreement, if GMAC

8    finds that MortgageClose.com's loan meets certain criteria, then GMAC purchases the loan

9    from MortgageClose.com. *Id.* GMAC does not control how MortgageClose.com employees

10   originate loans. *Id.* Nor does GMAC direct MortgageClose.com employees to take any

11   actions with respect to loans that GMAC purchases from MortgageClose.com. *Id.* The only

12   evidence plaintiffs offer to contradict the two witnesses' declarations are copies of the Client

13   Contract and Correspondent Manual between MortgageClose.com and GMAC, which merely

14   set forth the criteria for GMAC's purchase of loans from MortgageClose.com. Decl. of E.

15   Dunn, ¶ 20.

16       Under plaintiffs' theory, businesses who fulfill customer orders are agents of the

17   customers, whose orders control the work of the business. Any time a person walks into

18   Starbucks and orders a latte, Starbucks becomes the agent of that person. The person's order

19   effectively controls the manner in which Starbucks creates the latte, thus creating the agency

20   relationship, according to the instant motion. Likewise, plaintiffs seem to contend that

21   GMAC's criteria for purchasing loan products from MortgageClose.com constitutes the "right

22   to control" MortgageClose.com's loan origination actions. The contention is complete

23   nonsense. Just as Starbucks is free to disregard a customer's latte order, MortgageClose.com is

24   free to disregard GMAC's criteria and not sell any loans to GMAC. Decl. of E. Muscovitch,

25   ¶ 10. Even if the Court agrees that a document cited by plaintiffs hints at an agency

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
16

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1   relationship, such evidence is flatly contradicted by the declarations of Muscovitch and Lam.

2   As such, a genuine issue of material fact would preclude the Court from ruling, as a matter of

3   law, that an agency relationship exists through which constructive notice passed from

4   MortgageClose.com to GMAC.

5       Genuine issues of material fact undercut all of plaintiffs' bases for establishing that

6   GMAC had constructive notice of plaintiffs' equitable interest in the Property on October 24,

7   2007.

8       C.   Since a Reasonable Fact Finder Can Conclude That GMAC Is a *Bona Fide*
           Encumbrancer Lacking Constructive Notice, Plaintiffs Are Not Entitled to An
9          Order Transforming the Statutory Warranty Deed to Pierson Into an Equitable
           Mortgage.
10

11      Absent constructive notice, GMAC is a *bona fide* encumbrancer whose security interest

12  cannot be terminated by plaintiffs' claim of an equitable mortgage. No Washington authority

13  holds that an equitable mortgage, if created, will void a statutory warranty deed relied upon by

14  a *bona fide* encumbrancer who did not have any constructive knowledge of the plaintiffs'

15  equitable interest. On the contrary, absent evidence of forgery, a *bona fide* encumbrancer is

16  entitled to retain its security interest in the subject property.

17      Plaintiffs undeniably seek to void the warranty deed to Pierson. According to the

18  plaintiffs, transforming the warranty deed into an equitable mortgage means that Pierson's fee

19  simple title is completely ineffective, retroactively and going forward, as if plaintiffs never

20  executed the deed. Pltfs.' Mot. for Summ. Jmt., p. 17. Plaintiffs do not articulate precisely

21  how this differs from voiding the warranty deed and they cannot credibly do so, since they

22  expressly assert that this Court's creation of an equitable mortgage would eliminate GMAC's

23  deed of trust from the record title to the Property. *Id.*[4]

24

25  ────────────────────────
    [4] Plaintiff's motion states: "Since Pierson obtained only a security interest in the property, and not full legal title,
    the deed-of-trust Pierson gave Mortgageclose.com, which was later assigned to GMAC, would – by hypothesis –

GMAC MORTGAGE CORPORATION'S OPPOSITION TO                **Williams, Kastner & Gibbs PLLC**
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -        601 Union Street, Suite 4100
17                                                       Seattle, Washington 98101-2380
                                                         (206) 628-6600

2759865.1

1    Voiding Pierson's warranty deed as regards GMAC is contrary to Washington law. If

2  the signature on a deed is authentic but procured through fraud, the deed is not void as to a

3  *bona fide* purchaser or encumbrancer. *Diimmel v. Morse*, 36 Wn.2d 344, 218 P.2d 334 (1950).

4  In *Diimmel*, an unfortunate widow was tricked into signing warranty deeds conveying her two

5  real properties to her new fiancé, who convinced her that her prior deeds were defective and

6  that third-parties were trying to have her committed to an asylum. *Id*. at 345. Mrs. Diimmel

7  signed the deeds aware of their legal effect but unaware that her fiancé was deceiving her. *Id*.

8  at 345-46. The dishonest fiancé then used one of the properties as security for a loan. *Id*. at

9  345. Once a lawsuit arose, Mrs. Diimmel sought to have the loan debt canceled, arguing that

10 her signatures on the deeds should be treated as forgeries, given that they were procured

11 through an egregious fraud. *Id*. at 346. The court disagreed, holding that "a deed to which the

12 grantor's signature was secured by fraud does not stand on the same footing as a forged deed,

13 so far as concerns an innocent encumbrancer in good faith and for value." *Id*. at 347.

14    Plaintiffs' do not dispute that their signatures on the warranty deed are authentic.

15 Plaintiffs' claim they were induced to sign the deed by fraudulent statements by others. In

16 their second amended complaint, plaintiffs allege that Michelle Merceri, while acting as an

17 agent for the other Alternative Investors defendants, made a series of fraudulent representations

18 concerning information material to the Plaintiffs' decision to enter into the loan transaction

19 with Pierson. *See* Plaintiffs' Second Amended Complaint, ¶¶ 109-113. One of the fraudulent

20 representations was that an investor would hold title to the Plaintiffs' home, and the reason for

21 holding title was to collateralize the loan. *Id*., ¶ 109(c). Plaintiff Karen Handlin testified that

22 she signed the warranty deed believing that Pierson would not use it to assert ownership over

23 the Property. Ex. 3 to the Decl. of M. Ferguson, p. 108. Under *Diimmel*, the warranty deed is

24

25 only authorize the trustee to foreclose *upon Pierson's security interest*." Pltfs.' Mot. for Summ. Jmt., p. 17, lines 15-17.

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
18

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1    not void. Moreover, since issues of fact exist as to whether GMAC had constructive notice of

2    the alleged fraud, a reasonable factfinder could and should conclude that GMAC was a *bona*

3    *fide* encumbrancer entitled to rely upon the warranty deed in taking its assignment of the Deed

4    of Trust. Therefore, in light of the fact issues, the Court cannot on summary judgment create

5    an equitable mortgage removing the Deed of Trust from record title to the Property.

6          D.    Even If An Equitable Mortgage Were Found to Exist, It Would Not Void the
     Warranty Deed as Regards GMAC.

7

8          Even if this Court were to agree with plaintiffs equitable mortgage argument after

9    considering all of the evidence at trial, the *Diimmel* decision shows that the Court could create

10   an equitable mortgage that is ineffective as to *bona fide* encumbrancers. A court may void a

11   deed as to the accused swindlers to prevent them from benefiting from their fraud, while at the

12   same time preserving the rights held by a *bona fide* encumbrancer who justifiably relied upon

13   the deed. Plaintiffs cite no authority contrary to *Diimmel*. Plaintiffs instead devote several

14   paragraphs to emphasize the notion that equitable mortgages should be created to protect a

15   borrower's equitable right to redeem the property. Pltfs. Mot. for Summ. Jmt., pp. 12-13. Yet,

16   plaintiffs right to redeem is in no way threatened by GMAC's security interest in the Property

17   and plaintiffs have not explained how it could be. If, as in *Diimmel*, this Court were to void the

18   warranty deed as to Pierson and Alternative Investments, but preserve its legal effect as to

19   GMAC, then plaintiffs would retain their right to redeem in the event that GMAC sought to

20   foreclose on the Deed of Trust. There is no justification under the decisions cited by plaintiffs

21   for an equitable mortgage that removes GMAC's Deed of Trust from record title to the

22   Property.

23         Not only that, but because GMAC paid off a prior deed of trust, it is entitled to step into

24   the priority date of the prior deed of trust under the doctrine of equitable subrogation. The

25   leading case confirming the doctrine's application in Washington is *Bank of America v.*

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
19

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1      *Prestance Corp.*, 160 Wn.2d 560, 160 P.3d 17 (2007).  In *Prestance*, the Washington Supreme

2  Court adopted the Restatement (Third) of Property: Mortgages § 7.6 (1997), and held that a

3  lender was equitably subrogated to the first lien position of the mortgage it paid off, regardless

4  of whether it had constructive notice or actual knowledge of the intervening lien prior to

5  making the refinance loan.  *Id.*, at 582.  One of the primary reasons given by the *Prestance*

6  court in support of the application of the doctrine was "to avoid a person's receiving an

7  unearned windfall at the expense of another."  *Id.*, at 567, quoting Restatement, cmt. a.

8      GMAC's payoff of the prior deed of trust to Argent Mortgage Company, LLC equitably

9  subrogates GMAC into a lien priority date of November 4, 2004.  Therefore, regardless of

10  whether the Court finds that an equitable mortgage exists or not, no authority supports a ruling

11  that the equitable mortgage automatically terminates GMAC's interest.

12          E.      Plaintiffs Are Not Entitled to Terminate GMAC's Security Interest Where They
                   Caused Their Own Misfortune.

13

14      Plaintiffs are before this Court in equity, requesting that the Court drastically alter the

15  rights of the parties in order to benefit plaintiffs, without a trial on the merits.  It is, however,

16  "an ancient and respected principle of the law that, where one of two innocent parties must

17  suffer, the one who was the cause of the misfortune must bear the burden, rather than the

18  other."  *Lewis v. Kujawa*, 158 Wash. 607, 291 P. 1105 (1930), quoting *Murry v. Carlton*, 65

19  Wash. 364, 118 P. 332 (1911).  The *Lewis* court observed that, even where a person is tricked

20  into signing a document affecting his title to real property, such person bears some fault for

21  causing the damage he sustains:

22        It is within his power to prevent the fraud.  He is not without negligence, fault, or
       blame.  If he relies upon others to advise him of his right, they are advisers of his
23        own choosing.  If they deceive him, he should not be permitted to visit the wrong
       on an innocent person who has parted with his property in reliance on the good
24        faith of the transaction.  He is the cause of the misfortune, and the principle of law
       quoted from the case of *Murry v. Carlton, supra*, applies.

25

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
20

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1  *Lewis*, 158 Wash. at 617-18.

2       Here, the evidence viewed in a light most favorable to the non-moving party shows that

3  the plaintiffs were a cause of their own misfortune. Alternative Investors offered plaintiffs an

4  absurdly generous liberation from their debt. Or a complex, high-risk gamble. Or a swindle.

5  Plaintiffs should have at least considered whether a concoction too good to be true probably

6  was. Yet, they admit doing practically nothing to investigate Alternative Investments' methods

7  or intentions before signing away their house in a loan transaction they made no effort to

8  comprehend. To get what they wanted, plaintiffs blindly signed a purchase and sale

9  agreement, a statutory warranty deed, escrow instructions, *et cetera* without asking basic

10  questions, such as:

11      1.    Why am I selling my house when what I want is a lower monthly payment?

12      2.    Who will own my house if I sell and deed it to someone else?

13      3.    How can I expect to own my house if I sell or deed it to someone else?

14      4.    Can the new buyer kick me out of my house if he owns it?

15      5.    Why is the supposedly "wealthy" investor borrowing $417,000 from

16               MortgageClose.com?

17      6.    What is the loan money for and who has to pay it back?

18      7.    What will happen to my $140,000+ worth of equity in the house?

19      8.    When and how will I own my house later on, exactly?

20       Plaintiffs chose Alternative Investors and relied entirely upon their advice. They found

21  nothing about Alternative Investors online and learned nothing from the references provided by

22  Michelle Merceri. Based upon less than nothing, plaintiffs decided to enter into a complex

23  transaction with Alternative Investors in which they would sell and deed their house to a

24  stranger whom they "assumed" would not *really* take title to their house. They did not hire a

25  lawyer to review the complex documents and protect their interests, though they took the effort

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
21

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    to do so after the transaction blew up in their faces.  And on these facts, plaintiffs now seek

2    summary relief, astonishingly.

3        GMAC did nothing to entice plaintiffs into their situation.  Only by asserting highly

4    disputed facts have plaintiffs raised the *possibility* that GMAC somehow caused their damages.

5    Given that plaintiffs caused so many of their own problems and given that they keenly sought

6    the benefit of the money secured by GMAC's Deed of Trust, it would be unjust to create an

7    equitable mortgage eliminating GMAC's interest in the Property.   Under *Lewis*, it is the

8    plaintiffs who must bear the consequences of their signatures.

9        F.    Plaintiffs Should Pay Monthly Rent for the Property During the Pendency of the
             Lawsuit.
10

11        Plaintiffs have lived rent-free and payment-free at the Property for nearly two years.

12    GMAC paid off $297,020.78 in prior debt owed by plaintiffs on the Property and plaintiffs

13    benefited directly from that payment.  No claim asserted in plaintiffs' lawsuit could possibly

14    entitle them to the Property free of any debts and encumbrances whatsoever.   Therefore,

15    GMAC should be able to request payment of rent into the Registry of the Court during the

16    pendency of the litigation.   The Court should address GMAC's request prior to ruling on

17    plaintiffs' motion for partial summary judgment.

18        VI.  REQUEST FOR FRCP 56(f) CONTINUANCE OF THE HEARING

19        Plaintiffs' claim for an equitable mortgage hinges upon the intent of the parties to the

20    Pierson loan transaction.  However, the record before the Court contains less than half the story

21    regarding what the parties intended.  Plaintiffs establish intent by offering plaintiff Karen

22    Handlin's recollection of hearsay statements made by defendant Michelle Merceri, whose

23    deposition has yet to be taken.  By notice dated December 9, 2009, plaintiffs noted Merceri's

24    deposition for February 23, 2010, but it has since been continued to April 20, 2010.

25    Declaration of David Weibel, ¶ 2.  Plaintiffs offer no information about Murphy Pierson's

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
22

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

1   intent as to the statutory warranty deed, other than the general circumstances of the loan.

2   Pierson's deposition has yet to be taken as well. By notice dated December 9, 2009, plaintiffs

3   noted Mr. Pierson's deposition for February 19, 2010. *Id.*, ¶ 3. Because that dated presented a

4   conflict, GMAC co-counsel David Weibel wrote to plaintiffs' counsel to request Pierson's

5   deposition be noted for an alternative date so he could attend. *Id.* On January 11, 2010,

6   Pierson's deposition was subsequently noted for March 2, 2010, then again to March 9, 2010,

7   and now is anticipated to take place on March 11, 2010, pending approval of Pierson's new

8   counsel of record. *Id.*

9          To enable GMAC to obtain opposing affidavits from Merceri and Pierson regarding the

10  intent of the parties, the Court should continue the hearing on plaintiffs' motion for partial

11  summary judgment for at least thirty days.

12         Likewise, plaintiffs rely upon the testimony of their attorney, Eric Dunn, to establish

13  that that a "reasonable" response by GMAC would have included contacting them directly,

14  prior to GMAC's purchase of the Note on October 24, 2007, regarding plaintiffs' occupancy of

15  the Property. To the extent that plaintiffs seriously rely upon the expert opinion of their

16  counsel regarding the reasonableness of GMAC's actions, GMAC should be given the

17  opportunity to depose Mr. Dunn regarding his opinions, which were not disclosed prior to the

18  filing of the instant motion. Whether he is qualified to render such opinions, or whether Mr.

19  Dunn has personal knowledge of industry standards, should be the subject of further inquiry

20  before judgment can be rendered.

21  VII. <u>PROPOSED ORDER</u>

22         GMAC requests that the Court enter its proposed order, which is attached hereto.

23  ///

24  ///

25  ///

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
23

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1

VIII.  <u>CONCLUSION</u>

For the reasons enumerated herein, defendant GMAC respectfully requests that this Court enter its proposed order denying plaintiffs' motion.  In the alternative, the Court should continue the hearing on plaintiffs' motion to permit further discovery.

DATED this 1st day of March, 2010.

WILLIAMS, KASTNER & GIBBS PLLC

By _____
    Robert W. Sargeant, WSBA #12816
    Marshall Ferguson, WSBA #29528
    Co-Counsel for Defendant GMAC Mortgage
    Corporation

GMAC MORTGAGE CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT -
24

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2759865.1